JONATHAN W. CARLSON, ESQ.
Nevada Bar No. 10536
*jcarlson@mbswc.com*
MICHAEL A. PINTAR, ESQ.
Nevada Bar No. 3789
*mpintar@mbswc.com*
STACY NORRIS, ESQ.
Nevada Bar No. 15445
*snorris@mbswc.com*
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
Telephone:     (702) 949-1100
Facsimile:      (702) 949-1101
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL MINDEN & THERESA MINDEN, | CASE NO.          2:21-cv-151-APG-BNW |
| Plaintiffs, | **JOINT PRE-TRIAL ORDER** |
| v. | |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, an Illinois Corporation, | |
| Defendants. | |

After pretrial proceedings in this case,

IT IS SO ORDERED:

**I.**

This is an action for breach of contract and bad faith arising out of an insurance policy for homeowners' coverage.

Plaintiffs' Second Amended Complaint brings forth causes of action against Defendant for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and contractual breach of the implied covenant of good faith and fair dealing based on damages Plaintiffs allege were sustained to their residence in a loss occurring on or about September 1, 2019. Defendant

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

filed a Motion for Summary Judgment [ECF 73] on October 31, 2022, which the Court denied in part and granted in part on August 15, 2023 [ECF 98], dismissing only Plaintiffs' cause of action against Defendant for contractual breach of the implied covenant of good faith and fair dealing. Thus, Plaintiffs' claims for breach of contract and bad faith remain.

Plaintiffs' operative Complaint seeks relief in the form of general and special damages, punitive damages, reasonable attorney fees and costs of suit, pre-judgment interest, post-judgment interest, and for such other relief as the Court may deem just and proper.

Defendant maintains that it has not breached the policy with Plaintiffs in relation to any policy benefits.

**II.**

Statement of jurisdiction: This action was originated by the filing of a Complaint in the District Court, Clark County, Nevada on August 31, 2020. Defendant removed the case from State Court to Federal Court [ECF 1] on January 28, 2021, citing diversity between the parties and that this Court has jurisdiction of the matter under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this matter because Plaintiffs reside in Nevada and Allstate is an Illinois corporation, and the amount in controversy exceeds $75,000.00.

**III.**

The following facts are admitted by the parties and require no proof: At the time and place Plaintiffs allege the subject loss occurred, September 1, 2019, Plaintiffs were insured by Defendant with applicable dwelling protection limits of $2,964,000.00 and personal property protection limits of $1,278,400.00. The policy provisions are incorporated herein by this reference.

**IV.**

The following facts, though not admitted, will not be contested at trial by evidence to the contrary: None at this time.

/ / /

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

### V.

The following are the issues of fact to be tried and determined at trial:

(**a**)    **Plaintiffs' View:**

The following issues of fact are to be tried and determined at trial include the following (among other possible issues to be presented at trial):

1.    In 2003, Michael and Theresa Minden (the "Mindens" or "Plaintiffs") purchased a new high-end custom home located at 4 Highland Creek Drive, Henderson, Nevada 89052 (the "Property"), where the Mindens have since resided.

2.    The Mindens have been long-time loyal customers of Allstate. Since 2003 and continued through this day, the Mindens maintained an active insurance policy over the Property through Allstate (the "Policy").

3.    A sudden storm hit the Property on or around September 1, 2019, which Allstate has determined is the "time of loss."

4.    At the time of loss, Plaintiffs were insured by Defendant with applicable dwelling protection limits of $2,964,000.00 and personal property protection limits of $1,278,400.00.

5.    When water began leaking in the interior of the Property in November 2019 from rainstorms subsequent to the time of loss, the Mindens contacted Allstate on November 14, 2019.

6.    On or about November 21, 2019, Allstate's claim adjuster, Adam Chavez, inspected the Property.

7.    After the only inspection of the Property by Mr. Chavez on November 21, Mr. Chavez and Allstate determined to extend coverage to the Property as "sudden and accidental direct physical loss to the [P]roperty."

/ / /

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

8.  Allstate and Mr. Chavez extended coverage for eight (8) wind-damaged roof tiles and for all the interior damage to the Property caused by the intruding water "as sudden and accidental."

9.  Mr. Chavez, however, concluded that the felt underlayment or membrane of the roof was not covered by the policy because it had deteriorated due to "wear and tear . . . allowing rain water to enter home."

10.  In order to repair the interior of the Mindens' Property, there are three main types of work: water mitigation (drying and removal of the water), mold remediation (treating the mold), and repairs or restoration of the damage (fixing the damage).

11.  After Mr. Chavez's inspection on November 21, 2019, he prepared a restoration estimate to repair the Mindens' Property. After depreciation and the $1,000.00 deductible, the total damage to the Mindens' Property based on Mr. Chavez's restoration estimate was $2,887.56.

12.  Allstate did not issue a check to the Mindens for the $2,887.56 at that time.

13.  Allstate's claim manual requires that payments be made promptly and does exempt prompt payment if the insured does not authorize payment.

14.  Allstate did not issue a check to the Mindens for the $2,887.56 at that time because, according to Mr. Chavez, "Mr. Minden never authorized me to."

15.  During his inspection, Mr. Chavez did not fully document or inform the Mindens which tiles would be covered, and to this day, Allstate does not know which 8 tiles it agreed to cover as required by its policies and procedures.

16.  Following Mr. Chavez' inspection, Mr. Chavez requested that an Allstate contractor also inspect the Property for water mitigation and mold remediation and directed that a temporary tarp to be installed over a portion of the roof of the Property.

/ / /

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

17. Per Mr. Chavez' request, two of Allstate's vendors or contractors – Thistle DKI and D&L Roofing – were retained to inspect the roof, including the underlayment or felt, and to tarp the roof.

18. Within a month of the claim being submitted, Allstate had its own adjustor inspect the roof of the Property and also had two roofing contractors inspecting and tarping the roof of the Property.

19. The evening of November 21, 2019, Mr. Minden sent a text message to Mr. Chavez stating, "Ceiling came down tonight off the kitchen."

20. Despite the text message from Mr. Minden, Mr. Chavez did not inspect the Property again to update his restoration estimate.

21. Mr. Chavez said he was going to arrange for a second restoration estimate prepared by an Allstate contractor.

22. Despite Mr. Chavez' notes in the claim file and telling Mr. Minden that Allstate would obtain another estimate, Allstate never obtained a second estimate to repair damage to the Mindens' Property.

23. On November 27, 2019, Allstate's contractor (Thistle DKI), which was preparing a mold remediation and water mitigation estimate, emailed Mr. Chavez stating that "Cause of loss is a roof leak in multiple areas. affecting [sic] 3 hallways master closet, master show, storage room hall closet and hall bath downstairs." Thistle DKI's email further states, "mold was found during our initial inspection" and that "[m]old removal will begin once roof is repair[ed]" as there "could be more damage."

24. Thistle DKI prepared two estimates, one for mold remediation ($13,742.81) and another for water mitigation ($24,506.79). Thistle DKI did not prepare a restoration estimate to repair the damage to the Property.

25. There is no evidence that Allstate sent the Mindens the water mitigation estimate of $24,506.79 prepared by Thistle DKI.

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

26.   Thistle DKI's estimates and emails indicated additional damage to the Property that was not covered by Mr. Chavez in his estimate. Despite seeing that there was more extensive damage to the Property than originally inspected, Mr. Chavez did not inspect the Property again and did not have another restoration estimate prepared of the damage to the Mindens' Property.

27.   After the tarping by Allstate's contractor, water continued to leak into the interior of the Property because the tarp did not cover the entire roof and it was not secured and the wind and elements caused the tarp and sandbags to be blown about and to deteriorate.

28.   Allstate did not reinspect the Property – or even offer to reinspect it – after the Property incurred additional damage caused by the leaking roof and after the Mindens paid to repair the roof.

29.   On November 21, 2019, Mr. Chavez advised Mr. Minden to have a roofer come inspect the Property and determine the cause of the damage and costs to repair.

30.   Per Mr. Chavez' instructions, the Mindens arranged for a local roofing company, Prestige Roofing, Inc. ("Prestige"), to inspect the roof and determine the cause of the damage.

31.   On November 27, 2019, Prestige informed the Mindens that the damage to the Property was the result of exposure caused by missing or broken roof tiles that were displaced by wind.

32.   On December 13, 2019, the Mindens informed Allstate of Prestige's findings – specifically, that extreme winds shattered and displaced roofing tiles – exposing certain portions of the Mindens' home. In Prestige's inspection and resulting estimate, they found a "higher" amount of tile breakage on the Mindens' roof and estimated that 600 square feet of roof tiles would have to be replaced on the Mindens' roof.

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

33.     Allstate was not willing to consider the findings of Prestige – that extreme winds shattered and displaced roofing tiles exposing certain portions of the Mindens' home – based on Allstate's early determination that leaks in the Mindens' roof and damage to the Property was caused by "wear and tear only." Allstate continued to maintain that it would only cover 8 wind-damaged tiles on the roof and all of the interior damage.

34.     In late January 2020, Allstate decided to close or suspend the Mindens' claim because Mr. Minden purportedly did not return one phone message left by Mr. Chavez in one week.

35.     On January 29, 2020, Allstate sent a letter to the Mindens stating, "We've been unable to reach you regarding the claim you filed under Allstate Property and Casualty Insurance Company 00098637067 on November 14, 2019. As a result, we've temporarily suspended your claim."

36.     On the same day, however, Allstate sent another letter to the Mindens stating,

We appreciate the time you've spent assisting us with your claim. To recap our phone conversation about your water damage, you have decided not to accept our offer to hire a professional water removal service for your property. You declined this because you have not decided on how you would like to move forward with the claim.

We hope you will reconsider. It's important to remove water right away after a loss because:

- Water may cause further damage
- Moisture can lead to mold formation
- Failure to remove water could lead to a full or partial denial of your claim

You policy outlines this in "Section I – Conditions"; Paragraph – "What You Must Do After A Loss."

This section reads in part as follows:

"In the event of a loss to property that may be covered by this policy, you must . . . Protect the property from further loss. Make any reasonable repairs to protect it. Keep an accurate record of any expenses . . . ."

If you reconsider and would like our assistance in hiring a water removal service, I'd be happy to assist.

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

37.     In late January/early February 2020, Allstate arranged for J&J Contracting, LLC ("J&J"), one of Allstate's preferred vendors, to inspect the Property and provide a thorough inspection of the Property and prepare a detailed estimate of the repair costs for Allstate.

38.     In late January/early February 2020, J&J's estimator, Daniel Merritt, accompanied by one of J&J's senior roofers, performed an inspection of the Property. In an e-mail dated February 3, 2020, Mr. Merritt from J&J wrote to Mr. Chavez at Allstate:

> Adam we were called to inspect this property and found there are a lot of broken tiles on this rooftop. We want to walk this property with you one more time if you have an availability to show you what we think happened to break all of these roofing tiles. We are doing the estimate on the interior for the water damage as well but the bigger thing is to re-walk the roof with you one more time with what we think is going on there.

39.     J&J discovered that over Seventy-Five Percent (75%) of the Property's roof tiles were cracked either on the corners or straight across. Mr. Merritt specifically tested the roof tiles' strength both by walking across tiles and picking up and dropping tiles. Mr. Merritt discovered that walking across the tiles did not cause breakage, but picking up and dropping the tiles did, suggesting that the tiles were in fact broken from harsh and severe winds.

40.     The next week, Mr. Merritt e-mailed Mr. Chavez to report his findings. Specifically, in an e-mail dated February 6, 2020 from J&J to Mr. Chavez at Allstate, J&J stated,

> My senior roofer and I walked this property and found that over 75 percent of this roof has broken tiles. . . . We found that walking on these tiles does not cause this as we tried, but when we attempted to lift the tile and reset it back down, breakage occurred. This is most likely caused by very high and possibly tornadic wind gusts as this is the highest house on the hill and would not receive any protection from the wind from other houses. With this being said, we would recommend a full roof replacement due to this. Please see the photos attached to this email for review. I have not generated this estimate yet pending Allstate review on what is going to be accepted.

/ / /

/ / /

41.   Mr. Chavez responded to J&J by claiming that the pictures provided by J&J appeared to support Mr. Chaves's inference that the damage was actually caused by normal "wear and tear" and "expansion and contraction" of the roof tiles over time. Allstate was not willing to consider the findings of J&J – that extreme winds shattered and displaced roofing tiles exposing certain portions of the Mindens' home.

42.   Allstate continued to deny full coverage based on Allstate's early determination that leaks in the Mindens' roof and damage to the Property was caused by "wear and tear only."

43.   After Allstate denied full coverage of the damages, J&J was asked to provide an investigation for the sole purpose of determining the cause of the damages.

44.   J&J returned to the Property once again, and specifically inspected the roof to determine if the damage was the result of improper installation. Subsequently, J&J determined that the roof tiles were, in fact, installed correctly. With improper installation ruled out, J&J prepared a detailed report, including pictures of the properly installed roof tiles and an estimate to repair the damages. Following this inspection, Mr. Merritt e-mailed the Mindens with J&J's findings, which described "[the damage] was due to a sudden wind event such as a micro burst or strong gust which would've lifted these tiles and broke them when they laid back down." In the e-mail, Mr. Merritt recommended a full roof replacement "as partial replacement is not and [sic] option due to the amount damaged."

45.   J&J and Mr. Merritt prepared an estimate for a full roof replacement of the Mindens' roof totaling $110,426.54.

46.   J&J and Mr. Merritt also prepared a restoration estimate for the interior of the Mindens' Property on or about August 13, 2020 in the amount of $27,068.15, which was almost 10 times more than Allstate's restoration estimate of $2,887.56.

/ / /

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

47. On May 15, 2020, J&J e-mailed Allstate stating,

> I did go back out to the Minden residence he asked me to write up the same report I originally wrote up for the roof tiles. But I do understand Allstate's stand on there is no way to prove that was the case or what was the case for the breakage. I do not want to be in the way of Allstate coverage determination. I do understand claim coverage has to have more compelling proof in most cases. I will not pursue that anymore and I will let Allstate make the determination on what is to be covered.

48. On May 15, 2020, Mr. Chavez sent an e-mail to George Parks at J&J, stating, "Here are not [sic] photos from the Minden roof, I really only see wear and tear. Please let me know what your thoughts are on it."

49. Allstate continued to deny full coverage of the loss despite the opinions from Prestige and J&J.

50. Throughout this time, water continued to leak into the interior of the Property because the tarp installed by Allstate's contractor did not cover the entire roof and it was not secured and the wind and elements caused the tarp and sandbags to be blown about and to deteriorate.

51. The Mindens retained Reid Rubinstein & Bogatz to negotiate coverage of the loss. On June 5, 2020, Scott Bogatz, Esq. e-mailed Allstate a demand letter concerning full coverage of the loss. The demand letter specifically addressed Allstate's denial of the coverage for the majority of the broken roof tiles as well as the underlying felt.

52. Allstate reopened the claims and transferred the Mindens' policy dispute to Allstate's claims department, where handling was assigned to Jonathan Bourne.

53. On June 17, 2020, Mr. Bourne responded to the June 5, 2020, demand letter through e-mail by maintaining Allstate's position. Mr. Bourne did not authorize full coverage of the damages described by J&J.

///
///
///

54. Mr. Bourne caused payment to be issued to the Mindens in the amount of $2,887.56, which was for the eight (8) wind-damaged roof tiles and Allstate's estimate for the restoration of the damage to the interior of the Property per the estimate prepared by Mr. Chavez on November 21, 2019.

55. By June 2020, the tarp had severely deteriorated, which resulted in additional water seeping through the roof and scraps of debris, tarp, and loose sand from the weight bags descending throughout the Property.

56. In mid-June 2020, Allstate also denied coverage for a replacement tarp to be placed on the roof of the Property even though the first tarp installed by Allstate's contractor was worn and deteriorated and was not protecting the Property.

57. Allstate arranged for an engineer, Robert Bosek of EFI Global Inc. ("EFI"), to inspect the Property. On June 30, 2020, Mr. Bosek inspected the Property including the roof. Included in Mr. Bosek's report was a detailed description of the extensive damage to the interior and roof of the Property.

58. Mr. Bosek's report concluded that there was no wind damage to the Mindens' Roof. Mr. Bosek's report also included the following recommendation to Allstate: "The roofing assembly should be tested to locate the leak locations."

59. As of July 2020, Allstate had at least four – five counting J&J – adjustors, contractors, and/or engineers inspect the roof. Allstate never varied from the initial assessment made by Mr. Chavez that the roof was damaged by wind on September 1, 2019, but that Allstate would only cover 8 wind-damaged tiles on the roof, and the remainder of the roof, including the felt or underlayment was excluded from coverage because of wear and tear.

/ / /

/ / /

/ / /


1                                                                                                     PROPOSED JOINT PRE-TRIAL ORDER

CASE NO. 2:21-cv-151-APG-BNW

66. As admitted by Allstate, the Mindens' damages are at least 10 times the amount Allstate paid the Mindens in June 2020 ($2,887.56).

67. The interior of the Property suffered substantially more damage than Allstate offered to pay even though the interior damage was covered by the Policy and even though Allstate undeniably agreed to cover all the damage to the interior of the Property.

68. At the time of loss, the Property sustained substantial damage to the roof, exposing the underlying roof membrane or felt. The Mindens' roof was severely damaged by wind, which Allstate failed to cover and repair even though it was covered by the Policy.

69. Allstate's repair estimate completed on November 21, 2019 only covers a small fraction of the damage to interior and roof of the Property.

70. The extent of Plaintiffs' damages. Plaintiffs are seeking the following damages:

| Description | Damage Amount |
|---|---|
| Full Replacement of Roof (MINDEN 73-188; MINDEN 16194; MINDEN 16445-16575) | $104,279.00 - $127,562.50 |
| Roof Tarp by Precision Roofing (MINDEN 428) | $4,000.00 |
| Work performed by Kalb Industries (MINDEN 438-448) | $20,070.00 |
| Work performed by GSL Electric (MINDEN 16186-16188) | $8,921.00 |
| Work performed by Contract Carpet, Inc. (MINDEN 16189) | $5,900.00 |
| Work performed by Closets and Cabinetry (MINDEN 16190) | $22,800.00 |
| To repair concrete (MINDEN 16191; MINDEN 16445-16575) | $18,500.00 |
| Painting of Exterior of Residence (MINDEN 16193; MINDEN 16445-16575) | $13,900.00 |
| Work performed by Roberts Roof & Floor (MINDEN 16196) | $495.00 |
| Remediation and Repair of Interior of Residence (M.GEIB_1-240; M.GEIB_270; MINDEN 16445-16575) | $240,054.00 - $322,692.93 |
| Total amount of insurance premiums paid to Allstate (approximate) | $140,000.00 |
| Impact on equity of residence | $6,500,000.00 |
| Loss of use and enjoyment of the residence | $198,322.00 |
| Rent for six months while Property is repaired | $36,000.00 |
| Moving expenses while Property is repaired | $25,000.00 |
| Damage to fine suits and dresses | $18,000.00 |

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

| Description | Damage Amount |
| --- | --- |
| Work performed by Immaculate Restoration (GEIB_FILE_16-21; MINDEN 16444) | $6,964.20 |
| Attorneys' Fees and Costs through Aug. 2022 (to be supplemented) (MINDEN 16631-16658) | $238,886.09 |
| Emotional Distress | $7,500,000.00 |
| Total: | $15,149,771.57 - $15,255,694.00 |

As a direct and proximate result of Allstate's conduct, the Mindens stand to lose coverage guaranteed by the Policy even though the Mindens have continued to pay their insurance premiums for 19 years.

Because Allstate has refused to honor the Policy and fully cover the damages, the Mindens have been unable to derive use and enjoyment of their home. As a direct and proximate result of the Defendants' conduct, the Minden have dealt with daily stress and worry of further water damage from their still unrepaired roof and have had to live in a home in complete disrepair.

In order to mitigate their damages, the Mindens have covered the cost to repair some damage to the Property. However, the large majority of the damage to the Property remains in complete disrepair.

Construction costs, labor, and materials have increased substantially from the original repair estimate provided in 2019 and 2020 and the costs to repair the Property will be much greater than originally estimated.

Plaintiffs also seek damages based on lost equity that they have not been able to realize by selling their home. Because Allstate has refused to honor the Policy and fully cover the damages, the Mindens have not been able to sell their home at the height of the real estate market and realize the equity in the Property. Because Allstate has refused to honor the Policy and fully cover the damages, Mindens have not been able to sell their home at the height of the real estate market and the cost of land has increased by 50% and the costs to build a new home has increased by 40%.

Plaintiffs also claim damages for clothes that were ruined by the leaky roof.

/ / /

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

14

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

Plaintiffs will seek punitive damages to the fullest extent allowed by law because Allstate's conduct constitutes oppression, fraud, or malice. *See* NRS 42.001 & 42.005.

Plaintiffs will also seek their attorneys' fees and costs in this matter.

Plaintiffs will also seek interest as allowed by law.

**(b)     Defendant's View:**

1.     Were the leaks in the Minden roof the result of poor installation and long-term wear and tear?

2.     Were any of the concrete tiles on the Minden roof displaced by wind?

3.     Did the Minden's failure to preserve the underlayment and damaged tile that were replaced in October of 2020, prejudice Allstate.

**VI.**

The following are the issues of law to be tried and determined at trial:

**(a)     Plaintiffs' view:** The following issues of law are to be tried and determined at trial include the following (among other possible issues to be presented at trial):

1.     Breach of Contract: To succeed on their breach of contract claim, the Mindens must show four elements: (1) a valid contract between the parties; (2) the Mindens' performance under the contract; (3) Allstate's material failure to perform; and (4) damages resulting from the failure to perform. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.").

a.     Whether Allstate breached the Policy by only paying for a small fraction of the interior Property damage.

b.     Whether Allstate breached the Policy by not fully covering damaged to the Mindens' roof.

/ / /

2.     Tortious Breach of the Covenant of Good Faith and Fair Dealing (Bad Faith): An insurance company commits tortious breach when in bad faith, it refuses to pay its insured under their policy without good cause. "The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort." *U.S. Fidelity & Guaranty Co. v. Peterson*, 540 P.2d 1071 (Nev. 1975). The Nevada Supreme Court has further stated that "'[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct.'" *Albert H. Wohlers & Co.*, 969 P.2d at 956 (quoting *Guaranty Nat'l Ins. Co.*, 912 P.2d at 272 (emphasis added)). An unreasonable delay in payment can also constitute bad faith. *Guar. Nat'l Ins. Co.*, 912 P.2d at 272 ("[T]his court has addressed an insurer's breach of the implied covenant of good faith and fair dealing as the unreasonable denial or delay in payment of a valid claim."). "[A] partial payment does not insulate the insurer from a bad faith claim if it delays or denies paying the entire loss." *Kingham*, 2017 U.S. Dist. LEXIS 162607, at *4.

a.     Whether Allstate committed bad faith in handling the Mindens' claim. The Mindens allege that the following conduct by Allstate constitutes bad faith (among other conduct by Allstate):

- After Mr. Chavez's inspection on November 21, 2019, he prepared an estimate of damages to repair the Mindens' Property. After depreciation and the $1,000.00 deductible, the total damage to the Mindens' Property based on Mr. Chavez's estimate was a mere $2,887.56, which also included the eight (8) broken roof tiles. That evening after Mr. Chavez's inspection, Mr. Minden sent a text message to Mr. Chavez stating, "Ceiling came down tonight off the kitchen." Despite the text message from Mr. Minden, Mr. Chavez did not inspect the Property again and update his estimate.

- Mr. Chavez stated that he was going to arrange for another contractor to come inspect the damage to the Property and prepare a second estimate of the cost of repair. However, despite his notes in the claim file and telling Mr. Minden that Allstate would obtain another estimate, Allstate never obtained a second estimate to repair damage to the Mindens Property.

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

- In November and December 2019, Allstate did not issue a check to the Mindens for the $2,887.56 because, according to Mr. Chavez, "Mr. Minden never authorized me to." Contrary to Mr. Chavez' testimony, Allstate's claim manual requires that payments be made promptly and does exempt prompt payment if the insured does not authorize payment.

- Further, Allstate's contractor, Thistle DKI, prepared two estimates, one for mold remediation ($13,742.81) and another for water mitigation ($24,506.79). Thistle DKI, however, did not prepare an estimate to repair the damage to the Property. Thistle DKI's estimates and emails indicate additional areas of damage to the Property that was not covered by Mr. Chavez in his estimate on November 21, 2019. Despite knowing that there was more extensive damage to the Property than originally inspected, Mr. Chavez did not inspect the Property again and did not have another estimate prepared of the cost to repair the damage to the Mindens' Property. Specifically, Mr. Chavez testified as follows:

  Q.·· But there's areas [of damage] included in this [mold estimate] that were not included in your repair estimate, correct?
  A.·· Correct.
  Q.·· But you didn't want to do another estimate for the repairs based on this?
  A.·· No, because Thistle was doing a repair  estimate. So they would include it in that.

  Thistle, however, never prepared a repair estimate.

- Allstate's adjustor and contractor informed the Mindens that water mitigation, mold remediation, and repair of the interior damage should not begin until the roof was repaired to stop the leaking. Allstate, however, was not willing to pay to repair the leaking roof except for eight wind damaged roof tiles. Thus, water mitigation, mold remediation, and repair of the interior damage could not begin until the Mindens paid to repair their leaking roof.

- Allstate had knowledge that water continued to leak into the interior of the Property and cause additional damage to the Property after Mr. Chavez's inspection because the tarp Allstate's contractor installed did not cover the entire roof and it was not properly secured. Even though water continued to leak, Allstate did not update its repair estimate. Allstate's repair estimate completed on November 21, 2019 was incomplete. As Allstate's claims expert, Mr. Evans, testified, Allstate cannot "determine the final scope and then estimate the costs of repairs until the leak has stopped and that requires repairs to the roof. . . . [Y]ou have to stop the leakage before you know how much damage there is finally to the interior." Mr. Evans testified that Allstate should have done a reinspection after the roof is repaired to determine the extent of the interior damages. Mr. Evans further testified that Allstate is "likely" liable for additional damage to the Property caused by an incorrectly or insufficiently installed tarp over the roof.

/ / /

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 W. Sunset RD, Suite 350
Las Vegas, NV 89113

1
PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

2

3      •    Allstate acted unreasonable when it decided to close or suspend the Mindens'
            claim in late January 2020 even though Allstate had not paid the Mindens for
4           the amounts Allstate knew it owed under the Policy.

5      •    In June 2020, seven months after the filing of the claim, Mr. Bourne caused
            payment to be issued to the Mindens in the amount of $2,887.56, which was
6           for the eight (8) broken tiles and Allstate's estimate for the damage to repair
            the interior of the Property per the estimate prepared by Mr. Chavez on
7           November 21, 2019. Mr. Bourne, Allstate's own adjustor, testified that the
            payment was not made in a timely or reasonable manner or in accordance with
8           Allstate's policies and procedures. Allstate's 30(b)(6) witness further testified
            that the $2,887.56 payment was not paid "promptly" as required by Allstate's
9           claims manual.

10     •    Allstate had knowledge by June 2020, the tarp that its contractor had installed
            had severely deteriorated, which resulted in additional water seeping through
11          the roof and scraps of debris, tarp, and loose sand from the weight bags
            descending throughout the Property. In mid-June 2020, Allstate also denied
12          coverage for a replacement tarp to be placed on the roof of the Property even
            though the first tarp was worn and deteriorated and was not protecting the
13          Property.

14     •    In June 2020, Allstate arranged for Mr. Bosek of EFI to inspect the Property.
            On June 30, 2020, Mr. Bosek inspected the Property including the roof and
15          prepared a report based on his inspection. Along with the damage to the roof,
            Mr. Bosek's report identifies substantial damage to the interior of the Mindens'
16          home. Despite the substantial damage noted in Mr. Bosek's report, Allstate
            never obtained another estimate of the damage to repair the interior of the
17          Mindens' Property other than Mr. Chavez's November 21, 2019 estimate. Mr.
            Chavez testified that Allstate did not believe another estimate of the interior of
18          the Property was needed despite the increase damage to the Property noted by
            Mr. Bosek, Allstate's retained engineer:
19
            Q.·· So at this time you weren't focused on the interior damages; is
20          that right?
            A.·· Correct.
21          Q.·· Why didn't you send out a new vendor to do an estimate of the
            estimate -- or of the interior at this time?
22          A.·· Again, I'm no longer involved in the claim other than what
            Jonathan [Bourne] sends me.
23          Q.·· But you didn't feel like a new estimate was needed for the interior
            at this point?
24          A.·· I didn't feel it was, no.

25     •    Allstate only admitted it owed the Mindens the amounts for the mold
            remediation and water mitigation – $29,506.79 total – on September 6, 2022,
26          almost three years after Mr. Chavez inspected the Property and as discovery
            was coming to a close in this matter. Allstate's 30(b)(6) witness testified,
27          however, that it was reasonable and clear to Allstate that it owed those
            amounts back in December 2019. Thus, it took almost three years and the
28          Mindens filing and litigating this action before Allstate admitted and informed

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

the Mindens that it owed them $29,506.79 and offered to pay it. The Mindens assert that their damages are much greater.

- The $29,506.79 – which Allstate now admits it owes the Mindens under the Policy – should have been paid to the Mindens back in November or December 2019.

- Allstate claimed that it could not pay the amounts for water mitigation and mold remediation – $29,506.79 total – until the Mindens provided proof that the work had been completed. However, Allstate's claim expert and Allstate's 30(b)(6) witness testified that there is nothing in the Policy that provides that Allstate can withhold payments until certain work is done. Allstate's 30(b)(6) witness testified that the Mindens were never told that the mold remediation and water mitigation amounts would be paid to them once the work was completed.

- Allstate never informed the Mindens that it was always willing to pay for the mold remediation and water mitigation ($29,506.79), or any amounts above the $2,887.56 for that matter. Allstate's claim expert testified that to act reasonably, an insurer has an obligation to tell its insured if it owes money to the insured under a policy that money will be paid out at some point.

- Allstate's 30(b)(6) witness testified that Allstate <u>knew</u> very early on that the Mindens' damages for the claim "far exceeded $2,887.56."

- Mr. Chavez did not document or inform the Mindens which eight tiles would be covered, and Allstate does not know which tiles 8 tiles it agreed to cover. Mr. Chavez further testified he did not document all the broken tiles that Allstate was covering by photograph.

- At his only visit to the Property on November 21, 2019, Mr. Chavez advised Mr. Minden to have a roofer come inspect the Property and determine the cause of the damage and costs to repair. Per Mr. Chavez' instructions, the Mindens arranged for a local roofing company, Prestige Roofing, Inc. ("Prestige"), to inspect the roof and determine the cause of the damage. On November 27, 2019, Prestige informed the Mindens that the damage to the Property was the result of exposure caused by missing or broken roof tiles that were displaced by wind. On December 13, 2019, the Mindens informed Allstate of Prestige's findings – specifically, that extreme winds shattered and displaced roofing tiles – exposing certain portions of the Mindens' home. In Prestige's inspection and resulting estimate, they found a "higher" amount of tile breakage on the Mindens roof and estimated that 600 square feet of tile would have to be replaced on the Mindens' roof. Despite stating that Allstate would cover any tiles whose breakage could be attributed to a one-time storm occurrent, Allstate was not willing to consider the findings of Prestige and continued to only provide coverage for eight (8) roof tiles.

- Allstate's own contractor, J&J, found extensive damage to the Mindens' roof caused by wind and asked that Mr. Chavez walk the Property and roof with them. Mr. Merritt testified that the underlayment or felt on the Mindens' roof could deteriorate in a "couple of weeks" due to broken or cracked tiles causing

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

"sun exposure." Mr. Merritt further testified that he did not know how Mr. Chavez could have determined that only eight tiles were broken based on the extent of the damage to the Mindens' roof: "With the amount of damage, the number of tiles across the roof, it's -- it was -- there's too much -- too much damage. It was a bigger percentage. So eight -- I wouldn't know -- even know where the number eight came from, to be honest."

**(b)** **Defendant's View:** Whether Defendant breached its contract of underinsured motorist benefits, and the amount of Plaintiff's entitlement to contractual underinsured motorist benefits under the breach of contract cause of action. Further, the parties will try the questions of whether Allstate adhered to the common law implied covenant of good faith and fair dealing, as well as the Unfair Claims Practices Act, NRS 686A.310, *et seq.*

# VII.

(a)     The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:

| No. | Description | Bate Numbers |
|---|---|---|
| 1 | Allstate Property and Casualty Insurance Company Declarations and Policy | ALLSTATE POLICY 1-90 |
| 2 | Allstate Property and Casualty Insurance Company Claim File | ALLSTATE CLAIMS 1-716 |
| 2a | Claim Notes | ALLSTATE CLAIMS 1-54 |
| 2b | First Notice of Loss Snapshot | ALLSTATE CLAIMS 57-60 |
| 2c | Policy and Claim Summary | ALLSTATE CLAIMS 61-63 |
| 2d | Email from Allstate to Michael Minden re First Notice of Loss Snapshot | ALLSTATE CLAIMS 87-89 |
| 2e | 11/14/19 Letter from Allstate to Michael Minden | ALLSTATE CLAIMS 90 |
| 2f | 12/12/19-12/13/19 Emails between Adam Chavez and Michael Minden | ALLSTATE CLAIMS 91-94 |
| 2g | 01/29/20 Letter from Adam Chavez to the Mindens | ALLSTATE CLAIMS 95 |
| 2h | 01/29/20 Letter from Adam Chavez to the Mindens | ALLSTATE CLAIMS 96-97 |
| 2i | 06/05/20 Letter from Reid Rubinstein to Allstate | ALLSTATE CLAIMS 98-100 |
| 2j | 06/17/20 Letter from Jonathan Bourne to Reid Rubinstein | ALLSTATE CLAIMS 101 |
| 2k | 06/05/20-06/17/20 Emails between Jonathan Bourne and Reid Rubinstein | ALLSTATE CLAIMS 102-104 |

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

| No. | Description | Bate Numbers |
|---|---|---|
| 2l | 06/25/20 Letter from Reid Rubinstein to Jonathan Bourne | ALLSTATE CLAIMS 105-107 |
| 2m | 06/26/20 Letter from Jonathan Bourne to Reid Rubinstein | ALLSTATE CLAIMS 108 |
| 2n | 07/13/20 Email from Jonathan Bourne to Reid Rubinstein | ALLSTATE CLAIMS 109 |
| 2o | 07/27/20 Email from Jonathan Bourne to Reid Rubinstein | ALLSTATE CLAIMS 110 |
| 2p | 09/10/20 Emails between from Jonathan Bourne and Reid Rubinstein | ALLSTATE CLAIMS 111 |
| 2q | J&J Contracting Records (Photographs) | ALLSTATE CLAIMS 134-205 |
| 2r | J&J Contracting Records (Roofing Estimate) | ALLSTATE CLAIMS 206-321 |
| 2s | Prestige Roofing Records | ALLSTATE CLAIMS 322-323 |
| 2t | Thistle DKI Records/Reports (Estimate for tarping roof/carpentry work) | ALLSTATE CLAIMS 324-330 |
| 2u | Thistle DKI Records/Reports (Estimate for mold remediation) | ALLSTATE CLAIMS 331-379 |
| 2v | Thistle DKI Records/Reports (Estimate for water mitigation) | ALLSTATE CLAIMS 380-431 |
| 2w | Thistle DKI Photo Sheets | ALLSTATE CLAIMS 432-532 |
| 2x | EagleView Records/Reports and Photo Sheets | ALLSTATE CLAIMS 533-554 |
| 2y | EFI Global Records/Reports | ALLSTATE CLAIMS 555-584 |
| 2z | Allstate Records/Reports | ALLSTATE CLAIMS 585-603 |
| 2aa | Allstate Photo Sheets | ALLSTATE CLAIMS 604-716 |
| 3 | Documents received from Kalb Industries of Nevada, Ltd. in response to Defendant's Subpoena Duces Tecum | KALB 1-173 |
| 4 | Documents received from Prestige Roofing, Inc. in response to Defendant's Subpoena Duces Tecum | PRESTIGE 1-14 |
| 5 | Documents received from Roberts Roof and Floor, Inc. in response to Defendant's Subpoena Duces Tecum | ROBERTS ROOF 1-52 |
| 6 | Text messages to/from Pablo Mendoza/Roberts Roof and Floor, Inc. and Michael Minden dated October 8-9, 13-14, 19-21, 23, 27, 30, 2020; November 5, 9-10, 2020; December 15-17, 2020; March 9-10, 2021; and November 8-9, 12-13, 19-20, 2021 | ROBERTS ROOF 53-120 |
| 7 | Email from Marco Rodriguez/Thistle DKI to Michael Minden dated December 11, 2019, with attached mold remediation estimate/proposal | THISTLE DKI 1-49 |
| 8 | Letter from Allstate to Reid Rubinstein Bogatz 6/17/2020 | MINDEN 194 |
| 9 | Payment from Allstate in the amount of $2,887.56 6/18/2020 | MINDEN 195 |

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

| No. | Description | Bate Numbers |
|---|---|---|
| 10 | Map View of Roof (1) | MINDEN 225 |
| 11 | Images | MINDEN 226-252 |
| 12 | Text Comments from Roofer | MINDEN 253 |
| 13 | Additional Photos of Upstairs Damage | MINDEN 429-437 |
| 14 | Kalb Reconstruction of Lower Roof 10/28/2020 | MINDEN 438-448 |
| 15 | Various invoices and estimates Various | MINDEN 16186-16198 |
| 16 | Photographs of Plaintiffs' Residence Various | MINDEN 16198-16210 |
| 17 | Documents produced by Thistle DKI in response to Subpoena Duces Tecum | THISTLE FILE 1-14 |
| 18 | Letter from Community Association 4/3/2020 | MINDEN 16277-16278 |
| 19 | Letters from Allstate Insurance 1/29/2022 | MINDEN 16279-16281 |
| 20 | Emails 12/2019-12/2020 | MINDEN 16282-16316 |
| 21 | Text Messages 11/2019-10/2020 | MINDEN 16317-16359 |
| 22 | Images: jpeg to PDF | MINDEN 16360-16400 |
| 23 | Kalb Close Out Documents 2/12/2021 | MINDEN 16401-16439 |
| 24 | Roberts Roof & Floor: Invoice 12/31/2020 | MINDEN 16440-16443 |
| 25 | Immaculate Restoration: Invoice 4/6/2022 | MINDEN 16444 |
| 26 | Immaculate Restoration: Estimate 8/16/2022 | MINDEN 16445-16575 |
| 27 | Text Message: Bart 11/21/2019 | MINDEN 16603 |
| 28 | Xactware Response Letter to SDT 8/31/2022 | XACTWARE 1-2 |
| 29 | Produced Documents | XACTWARE 2-107 |
| 30 | Images: jpeg to PDF | XACTWARE 108-182 |

(b)     As to the following exhibits, the party against whom the same will be offered objects

to their admission on the grounds stated:

(1)     Set forth the plaintiff's exhibits and objections to them.

| No. | Description | Bate Numbers | Defendant's Objections |
|---|---|---|---|
| 31 | J&J Contracting Records (Emails between Michael Minden, Daniel Merritt, and Adam Chavez) | ALLSTATE CLAIMS 117-133 | Foundation, Relevance, Admissibility |

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

| No. | Description | Bate Numbers | Defendant's Objections |
|---|---|---|---|
| 32 | Documents received from J&J Contracting, LLC in response to Defendant's Subpoena Duces Tecum | J&J 1-154 | Foundation, Relevance, Admissibility |
| 33 | Allstate Insurance Company Property Claims Handling Manual (Oct 2018 to Present) *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 1-238 | Foundation, Relevance, Authenticity, Admissibility |
| 34 | Allstate Insurance Company Claim Bulletins US 186 and US 186R1 regarding Introduction of Wind and Hail Percentage Deductible Endorsement for Commercial Customer Policies *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 239-245 | Foundation, Relevance, Authenticity, Admissibility |
| 35 | Allstate Insurance Company Learning Reports for Adam Chavez and Jonathan Bourne *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 246-247 | Foundation, Relevance |
| 36 | Allstate Insurance Company Claim Summaries *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 248-251 | Foundation, Relevance |
| 37 | Allstate Insurance Company Payment Summaries *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 252-253, 255-257 | Foundation, Relevance |
| 38 | Allstate Insurance Company Financial Log *PRIVILEGED and CONFIDENTIAL and Subject to Stipulated Protective Order entered on August 15, 2022* | ALLSTATE 254 | Foundation, Relevance |
| 39 | Estimate from Allstate 11/21/2019 | MINDEN 53-61 | Duplicate of ALLSTATE CLAIMS 589-594 |
| 40 | Letter from Prestige Roofing, Inc. to Michael Minden 11/27/2019 | MINDEN 62 | Duplicate of ALLSTATE CLAIMS 323 |
| 41 | Email string between Michael Minden and Adam Chavez 12/13/2019 | MINDEN 63-64 | Duplicate of ALLSTATE CLAIMS 93-94 |

/ / /

/ / /

1

2

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| No. | Description | Bate Numbers | Defendant's Objections |
|---|---|---|---|
| 42 | Email from Daniel Merritt to Adam Chavez 2/6/2020 | MINDEN 65-66 | Duplicate of ALLSTATE CLAIMS 117-123 and J&J 12-14, 18-21 |
| 43 | Email from Daniel Merritt to Michael Minden 2/6/2020 | MINDEN 67-70 | Duplicate of ALLSTATE CLAIMS 117-123 and J&J 12-14, 18-21 |
| 44 | Email from Daniel Merritt to Michael Minden 5/13/2020 | MINDEN 71-72 | Duplicate of ALLSTATE CLAIMS 124-133 |
| 45 | J & J Contracting Estimate 5/13/2020 | MINDEN 73-188 | Duplicate of ALLSTATE CLAIMS 206-321 |
| 46 | Letter from Reid Rubinstein Bogatz to Allstate Insurance 6/5/2020 | MINDEN 189-191 | Duplicate of ALLSTATE CLAIMS 98-100 |
| 47 | Email from Jonathan Bourne to Scott Bogatz 6/17/2020 | MINDEN 192-193 | Duplicate of ALLSTATE CLAIMS 29 |
| 48 | Letter from Reid Rubinstein Bogatz to Allstate Insurance 6/25/2020 | MINDEN 196-198 | Duplicate of ALLSTATE CLAIMS 105-107 |
| 49 | Letter from Allstate to Reid Rubinstein Bogatz 6/26/2020 | MINDEN 199 | Duplicate of ALLSTATE CLAIMS 108 |
| 50 | Email from Jonathan Bourne to Scott Bogatz 7/13/2020 | MINDEN 200 | Duplicate of ALLSTATE CLAIMS 19 |
| 51 | EFI Global Engineering Report 7/10/2020 | MINDEN 201-224 | Duplicate of ALLSTATE CLAIMS 561-584 |
| 52 | Minden, EFI Global Report 7/10/2020 | MINDEN 254-277 | Duplicate of ALLSTATE CLAIMS 561-584 |
| 53 | Email From Daniel Merritt – J&J Contracting-2 5/13/2020 | MINDEN 278 | Duplicate of J&J 18-21 |

/ / /

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

| No. | Description | Bate Numbers | Defendant's Objections |
|---|---|---|---|
| 54 | J&J Contracting Itemization 2/1/2020 | MINDEN 279-426 | Foundation, Relevance, Admissibility |
| 55 | Jonathan Bourne's Communication 9/10/2020 | MINDEN 427 | Duplicate of ALLSTATE CLAIMS 10 |
| 56 | Invoice 1419TRP from Precision Roofing, Inc. 7/23/2020 | MINDEN 428 | Duplicate of J&J 24 |
| 57 | EHDRS 2013-2020 – Highest to Lowest Wind Gust | MINDEN 449-16167 | Foundation, Authenticity, Relevance, Admissibility |
| 58 | 2021-07-06 Re_Minden v. Allstate Email 7/6/2021 | MINDEN 16168-16169 | Foundation, Authenticity, Relevance, Admissibility |
| 59 | Images- Interior 12/2/2019 | MINDEN 16170-16175 | Foundation, Authenticity, Relevance, Admissibility |
| 60 | Notepad Text 12/27/2019 | MINDEN 16176 | Foundation, Authenticity, Relevance, Admissibility |
| 61 | Text Screenshots Multiple | MINDEN 16177-16180 | Foundation, Authenticity, Relevance, Admissibility |
| 62 | Images- Interior 12/2/2019 | MINDEN 16181-16185 | Foundation, Authenticity, Relevance, Admissibility |
| 63 | Real Estate Report 5/2/2022 | MINDEN 16211 | Foundation, Authenticity, Relevance, Admissibility |
| 64 | Comparable homes for rent | MINDEN 16212-16246 | Foundation, Authenticity, Relevance, Admissibility |
| 65 | Comparable homes for sale | MINDEN 16247-16276 | Foundation, Authenticity, Relevance, Admissibility |
| 66 | News Reports & Articles: Weather & Housing Market 9/2019-7/2022 | MINDEN 16576-16582 | Foundation, Authenticity, Relevance, Admissibility |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| No. | Description | Bate Numbers | Defendant's Objections |
|-----|-------------|--------------|------------------------|
| 67 | Real Estate Reports 2021-2022 | MINDEN 16583-16594 | Foundation, Authenticity, Relevance, Admissibility |
| 68 | AGC Construction Inflation Report 2/2022 | MINDEN 16595-16602 | Foundation, Authenticity, Relevance, Admissibility |
| 69 | Expenses & Fees 5/2020-7/2022 | MINDEN 16604-16630 | Foundation, Authenticity, Relevance, Admissibility |
| 70 | RRB Attorney Fees & Expenses | MINDEN 16631-16658 | Foundation, Authenticity, Relevance, Admissibility |
| 71 | Immaculate Restoration File | GEIB_FILE 1-341 | Foundation, Authenticity, Relevance, Admissibility |
| 72 | Marcor Platt Expert Report | M.PLATT 1-79 | Foundation, Authenticity, Relevance, Admissibility |
| 73 | Immaculate Restoration Estimate | M.GEIB 1-271 | Foundation, Authenticity, Relevance, Admissibility |
| 74 | Marcor Platt Supplemental Report | M.Platt 80-99 | Foundation, Authenticity, Relevance, Admissibility |
| 75 | Allstate Mayhem Commercial – Bunch of Wind (https://www.youtube.com/watch?v=bnNICw8KvJE) | | Foundation, Authenticity, Relevance, Admissibility |
| 76 | Allstate Mayhem Commercial – Snowy Roof (https://www.ispot.tv/ad/IVKj/allstate-mayhemsnow) | | Foundation, Authenticity, Relevance, Admissibility |
| 77 | Allstate Mayhem Commercial – Racoon in Attic (https://www.youtube.com/watch?v=eCgCLa5j6wk) | | Foundation, Authenticity, Relevance, Admissibility |
| 78 | https://app.docusketch.com/portal/tour/1495966/template/01dd2671-dcf4-4638-9ae8-a9aead06beee?forceDollHouse=1 | | Foundation, Authenticity, Relevance, Admissibility |

| No. | Description | Bate Numbers | Defendant's Objections |
|---|---|---|---|
| 79 | Email dated September 6, 2022 from Michael Pintar, Esq. to Scott Bogatz, Esq. and Michael Kelley, Esq. | | Foundation, Relevance, Admissibility |

Plaintiffs reserve the right to introduce any document that was produced in discovery at trial for their case in chief, cross examination, and/or rebuttal. Defendant objects to Plaintiff's reservation and introduction of any document not listed herein.

(2)    Set forth the defendant's exhibits and objections to them.

| No. | Description | Bate Numbers | Plaintiffs' Objection |
|---|---|---|---|
| 80 | Documents received from Anthem Country Club Community Association in response to Defendant's Subpoena Duces Tecum | ANTHEM 1-65 | Irrelevant |

(c)    Electronic evidence: Plaintiffs intend to present the electronic evidence listed below for purposes of jury deliberations at this time. See Defendant's objections to the same as noted above in Section VII(b)(1).

| No. | Description | Bate Numbers |
|---|---|---|
| 75 | Allstate Mayhem Commercial – Bunch of Wind (https://www.youtube.com/watch?v=bnNICw8KvJE) | None |
| 76 | Allstate Mayhem Commercial – Snowy Roof (https://www.ispot.tv/ad/IVKj/allstate-mayhemsnow) | None |
| 77 | Allstate Mayhem Commercial – Racoon in Attic (https://www.youtube.com/watch?v=eCgCLa5i6wk) | None |
| 78 | https://app.docusketch.com/portal/tour/1495966/template/01dd267-dcf4-4638-9ae8-a9aead06beee?forceDollHouse=1 | |

(d)    Depositions: None at this time. The parties, however, reserve the right to offer deposition testimony consistent with the rules of unavailability once the trial date is set.

(e)    Objections to Depositions: The parties reserve the right to object to the use of deposition transcripts and videotaped depositions of any witnesses offered by the parties, to the extent allowable by the rules of evidence, and consistent with the rules of unavailability.

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

## VIII.

The following witnesses may be called by the parties at trial:

(a)   **Plaintiffs' Witnesses:**

1.   Michael Minden
c/o Reid Rubinstein & Bogatz
300 S. 4th St., Suite 830
Las Vegas, NV 89101
(702) 776-7000

2.   Theresa Minden
c/o Reid Rubinstein & Bogatz
300 S. 4th St., Suite 830
Las Vegas, NV 89101
(702) 776-7000

3.   Luis Diaz De Leon
Rule 30(b)(6) designee and/or custodian of records for Defendant Allstate Property
and Casualty Insurance Company
c/o McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
(702) 949-1100

4.   Adam Chavez
c/o McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
(702) 949-1100

5.   Jonathan Bourne, Allstate Property and Casualty Insurance Company
c/o McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
(702) 949-1100

6.   Rule 30(b)(6) designee and/or custodian of records for Prestige Roofing, Inc.
R. Thomas Romney
3405 Bunkerhill Drive
North Las Vegas, NV 89032

7.   Rule 30(b)(6) designee and/or custodian of records for J & J Construction Company
8775 A. Lindell Road, Suite 100
Las Vegas, NV 89139
(702) 333-4888

/ / /

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

8.    Daniel Merritt
      4734 S Jensen Street
      Las Vegas, NV 89147
      or
      4302 North Gold Dust Trial
      Cedar City, UT
      (702) 682-2287

9.    Robert Bosek, EFI Global Inc.
      6380 McLeod Drive, #15
      Las Vegas, NV 89044

10.   Rule 30(b)(6) designee and/or custodian of records for Roberts Roof and Floor Inc.
      Michael McCarthy
      Pablo Mendoza
      Roberts Roof and Floor Inc.
      3250 Sirius Ave.
      Las Vegas, NV 89102

11.   Mike Geib
      Senior Project Manager
      Immaculate Restoration & Carpet Care
      3255 Pepper Ln # 100A
      Las Vegas, NV 89120

12    Rule 30(b)(6) designee and/or custodian of records for Thistle DKI
      Marco Rodriquez
      Danny Thistle
      Thistle DKI
      2242 Crestline Loop
      North Las Vegas, NV 89030
      (725) 235-6375

13.   Peter S. Evans
      c/o McCormick, Barstow, Sheppard, Wayte & Carruth LLP
      8337 West Sunset Road, Suite 350
      Las Vegas, NV 89113
      (702) 949-1100

14.   Marcor G. Platt, SE, PE
      PSE
      9805 South 500 West
      Sandy, Utah 84070
      (801) 943-5555

15.   Rule 30(b)(6) designee and/or custodian of records for Precision Roofing, Inc.
      8775 Lindell Road, Ste. 100
      Las Vegas, NV 89139
      (702) 969-9700

///

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

16.   Rule 30(b)(6) designee and/or custodian of records for Kalb Industries of Nevada, Ltd.
George Jarvis
Josi Dautel
Marty Comatov
5670 Wynn Road
Las Vegas, NV 89118-2313
(702) 365-5252

17.   Rule 30(b)(6) designee and/or custodian of records for GSL Electric
Dustin Williams
5100 Sobb Ave.
Las Vegas, NV 89118
(702) 364-5313

18.   Rule 30(b)(6) designee and/or custodian of records for Nevada Contract Carpet, Inc.
Jim Bucher
6840 West Patrick Lane
Las Vegas, NV 89118
(702) 362-3033

19.   Rule 30(b)(6) designee and/or custodian of records for Absolute Closets and Cabinetry
Jay Ward
6754 Spencer Street
Las Vegas, NV 89119
(702) 896-5450

20.   Rule 30(b)(6) designee and/or custodian of records for Reveles Concrete LLC
PO Box 96276
Las Vegas, NV 89183
(702) 996-3143

21.   Rule 30(b)(6) designee and/or custodian of records for J. Compton Painting & Paperhanging
Jeff Compton
6115 Grand Teton Dr.
Las Vegas, NV 89131
(702) 375-7621

Plaintiffs reserve the right to call any witness identified by Plaintiffs or Defendant during discovery. Defendant objects to Plaintiff's reservation and introduction of any witness not listed herein.

///
///

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

    **(b)**    **Defendant's Witnesses:**

1.    Michael Minden
    c/o Reid Rubinstein & Bogatz
    300 South Fourth Street, Suite 830
    Las Vegas, NV 89101

2.    Theresa Minden
    c/o Reid Rubinstein & Bogatz
    300 South Fourth Street, Suite 830
    Las Vegas, NV 89101

3.    Jonathan Bourne
    Allstate Property and Casualty Insurance Company
    PO Box 660636
    Dallas, TX 75266

4.    Adam Chavez
    Allstate Property and Casualty Insurance Company
    PO Box 660636
    Dallas, TX 75266

5.    Luis Diaz de Leon
    Allstate Property and Casualty Insurance Company
    PO Box 660636
    Dallas, TX 75266

6.    Peter S. Evans
    Evans Adjusters
    119 Underhill Road
    Mill Valley, CA 94941

7.    Timothy P. Marshall, PE/Meteorologist
    Haag Engineering Co.
    1410 Lakeside Parkway, Suite 100
    Flower Mound, TX 75029

8.    Robert J. Bosek Jr., PE
    EFI Global, Inc.
    1420 Iowa Avenue, Suite 200
    Riverside, CA 92507

9.    Robin Callaway, General Manager
    Anthem Country Club Community Association
    2518 Anthem Village Drive, Suite 110
    Henderson, NV 89052

10.    Daniel Merritt, Estimator
    J&J Contracting, LLC
    8775 South Lindell Road, Suite 100
    Las Vegas, NV 89139

11.    R. Tom Romney
Prestige Roofing, Inc.
3405 Bunkerhill Drive
North Las Vegas, NV 89032

12.    Michael McCarthy
Pablo Mendoza
Roberts Roof and Floor, Inc.
3250 Sirius Avenue
Las Vegas, NV 89102

13.    Marco Rodriguez, Estimator
Danny Thistle
Thistle DKI
2710 South Highland Drive
Las Vegas, NV 89109

## IX.

The attorneys or parties have met and jointly offer these three trial dates:

    April 15, 2024        April 22, 2024        April 29, 2024

It is expressly understood by the undersigned that the Court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the Court's calendar.

## X.

It is estimated that the trial will take a total of seven (7) to ten (10) days. A jury trial has been requested by Defendant.

APPROVED AS TO FORM AND CONTENT:

    DATED this 17th day of October, 2023

                      REID RUBINSTEIN & BOGATZ

                      By      */s/ Michael S. Kelley*
                              I. SCOTT BOGATZ, ESQ.
                              Nevada Bar No. 3367
                              MICHAEL S. KELLEY, ESQ.
                              Nevada Bar No. 10101
                              Attorneys for Plaintiffs

/ / /

/ / /

PROPOSED JOINT PRE-TRIAL ORDER
CASE NO. 2:21-cv-151-APG-BNW

DATED this 17th day of October, 2023

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

By      _/s/ Michael A. Pintar_
JONATHAN W. CARLSON, ESQ.
Nevada Bar No. 10536
MICHAEL A. PINTAR, ESQ.
Nevada Bar No. 3789
Attorneys for Defendant

## XI.

## ACTION BY THE COURT

This case is set for jury trial on the stacked calendar on April 22, 2024, at 9:00 a.m. in Courtroom 6C. Calendar call will be held on April 16, 2024, at 9:00 a.m. in Courtroom 6C.

DATED this 19th day of October, 2023.

By _____
UNITED STATES DISTRICT JUDGE

NOTICE: Due to the large number of criminal cases before this Court, civil trials may be held in a trailing status for months or assigned to another District Court Judge for trial. Therefore, the Court strongly urges the parties to consider their option to proceed before a Magistrate Judge pursuant to Local Rule IB 2-2, in accordance with 28 USC Section 636 and FRCP 73.

The Clerk shall provide the parties with a link to AO 85 Notice of Availability, Consent, and Order of Reference - Exercise of Jurisdiction by a U.S. Magistrate Judge form on the Court's website.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd, Suite 350
Las Vegas, NV 89113