UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL MINDEN and THERESA MINDEN,<br><br>Plaintiffs<br><br>v.<br><br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant | Case No.: 2:21-cv-00151-APG-BNW<br><br>**Order Denying Motion to Strike and Related Motion in Limine**<br><br>[ECF Nos. 103, 133] |

Defendant Allstate Property and Casualty Insurance Company moves to strike the plaintiffs' expert witness, Marcor G. Platt. ECF No. 103. Allstate filed a duplicate motion in limine to exclude Platt from testifying at trial. ECF No. 133.

The parties are familiar with the facts, so I repeat them here only as necessary to decide the motions. I deny the motions because the arguments Allstate raise are matters for cross examination and are not bases to strike Platt's testimony.

**I. ANALYSIS**

Federal Rule of Evidence 702 governs the admissibility of Platt's opinions. Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . :

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

To be admissible, expert testimony thus must be both relevant and reliable. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). Where there is a sufficient foundation for the testimony, it is up to the jury to evaluate the expert's credibility. *Id.* at 565-66.

Rule 702's inquiry is "flexible," and should be applied in favor of admitting the evidence. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quotation omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

### A. Opinions Based on Relevant Facts and Data

Allstate argues that Platt's testimony is not helpful to the jury, does not rely on relevant facts or data, and is speculative because Platt did not examine the original roof after the alleged wind incident took place in September 2019. Rather, Platt examined the roof in August 2021, after a new roof had been installed. Allstate also argues that the tiles Platt took for testing were not in their original locations because a roofing company moved them during the roof replacement in 2020. And it argues that any displaced tiles Platt observed in 2021 were unrelated to the wind event in 2019 because the roof was replaced in 2020. Allstate argues that Platt's opinions are based on other experts' reports and interviews, so his "opinions are nothing more than a comparison of the evidence provided by others." ECF No. 103 at 10.

The Mindens respond that Platt reviewed photographs of the original roof as well as conducted his own observations, tests, and calculations. They contend that as an expert, he is allowed to offer opinions based on facts or data that he has not personally observed. The

Mindens argue that the tiles Platt tested were original roof tiles because the new roof included some original tiles, so the fact that the roof was replaced in 2020 does not negate his results. They contend that if the new roof was susceptible to wind damage, so was the old one, so his observations in 2021 are not irrelevant or speculative.

### 1. Relying on Others' Reports

Platt interviewed the Mindens, the contractor who replaced the roof, and a neighbor who experienced wind damage to her roof. ECF No. 103-1 at 5, 9-10. He reviewed documentation, photographs, and reports prepared by others. *Id.* at 7. Platt also conducted two site visits to the Minden residence, conducted weather research, removed tile samples and sent them to a lab for testing, and performed calculations regarding maximum probable wind speed and how that may have impacted the tiles on the roof. *Id.* at 4, 8-9; ECF No. 103-5 at 7. Thus, Platt relied on information obtained from others, as well as his own observations and calculations, to reach his opinions. Doing so does not make his opinions inadmissible. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) (stating that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) (noting that "experts are entitled to rely on hearsay in forming their opinions" so long as "the underlying facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" (simplified)). Allstate has not suggested that experts in Platt's field would not have relied on interviews, photographs, or other secondhand sources that Platt relied on. Indeed, Allstate's expert likewise did not view the roof before its replacement

and similarly relied on photographs of the old roof and information provided by the Mindens.[1] *See* ECF No. 111 at 167, 173-74, 182. Thus, it appears that experts in the field would rely on the same or similar materials as Platt did, and Allstate has not shown otherwise. I therefore deny this portion of Allstate's motion.

### 2. Replacement Roof

When the roof was replaced, the roofer used the original tiles if they were not damaged. ECF Nos. 103-1 at 9; 103-2 at 13. Platt opined that the tiles he sent for testing were the original roof tiles, not replacements. ECF Nos. 103-1 at 4, 32; 103-5 at 9. Consequently, the jury could find that the testing performed on those tiles would be consistent with testing done on the original roof tiles. Whether the tested tiles were original tiles, whether they were in a different location after the roof replacement, and how the tiles were stored or transported to the testing site are matters for cross examination, not exclusion.

### 3. Displaced Tiles in 2021

During his site visits in 2021, Platt observed displaced and cracked roof tiles. ECF No. 103-1 at 10-11. Those tiles would not have been disturbed by a 2019 wind event because the roof was replaced in 2020. But Platt does not opine that the tiles he observed were displaced by the 2019 event. Rather, he notes that, like the original tiles, the current roof tiles "are susceptible to displacement under the windspeeds which occur at the property." *Id.* at 33. Because this information is relevant to the question of whether wind gusts at the proper speed could displace roof tiles and Allstate has not explained why that conclusion is not reliable, there is no basis to exclude his testimony. Consequently, I deny this portion of Allstate's motion.

---

[1] The Mindens argue that Allstate's expert's opinions should be excluded. ECF No. 110 at 19-23. But the Mindens have not moved to exclude Allstate's expert. I therefore consider their arguments only in the context of evaluating whether Allstate's motion should be denied.

**B. Unreliable**

Allstate argues that errors in Platt's report make his opinions unreliable. Specifically, Platt misstated the date of a rainstorm that caused water intrusion into the Mindens' home after the September 2019 wind event. Allstate also contends that Platt's testimony about the weather data regarding wind speeds is not supported. The Mindens respond that the minor error regarding the rainstorm date was corrected and does not invalidate Platt's opinions. They also argue that Platt explained the source of his wind speed opinion and it is corroborated by Allstate's expert.

### 1. Date of Rainstorm

In his initial report, Platt stated that Minden told him that there were "torrential rains" in September 2019 that caused water infiltration to the house. ECF No. 103-1 at 5. At his deposition, Platt acknowledged that was an error and the rainstorms with water intrusion were in November and December 2019. ECF No. 103-5 at 15-16, 19. Allstate has not explained what significance the date of the rainstorm has to Platt's opinions, which are not about water intrusion from a rainstorm. At best, this is a matter for cross examination, not exclusion.

### 2. Wind Speed

In his initial report, Platt stated that he reviewed historical weather data from 2013 to 2021 for Clark County and the City of Henderson. ECF No. 103-1 at 24. Platt stated that according to the National Oceanic and Atmospheric Administration's (NOAA) Storm Event Database, "four events with wind gusts between 50 and 62 knots were reported within 4 miles of the property from July 2018 to July 2021" and that "[n]o gusts over 62 knots were recorded within four miles of the property from July 2003 to July 2021." *Id.* He also stated that, according to NOAA's Storm Prediction Center, 62 mile per hour gusts were reported at the Henderson

5

Executive Airport, and on September 1, 2019, "winds with gusts exceeding 75 mph crossed the southeastern Las Vegas valley and Henderson." *Id.*

Although Allstate contends there is no support for Platt's statement regarding the 75 mph wind gusts, Platt cited the source for this data point. ECF No. 103-1 at 24 n.7. Allstate's expert noted the same information as Platt, which is that on September 1, 2019, wind gusts "exceeded 75 mph across the southeast side of the Las Vegas valley including the city of Henderson." ECF No. 111 at 170. Additionally, Platt explained that he did not include the 75 mph data point in Table 2 of his report "because there was no specific location given." ECF Nos. 103-1 at 25; 103-5 at 23-24. I therefore deny Allstate's motion on this point.

**C. Supplemental Report**

Allstate seeks to exclude Platt's supplemental report because it refers to wind events on dates unrelated to the September 2019 storm that allegedly damaged the Mindens' roof. Allstate contends the supplemental report contains dates and wind speeds that are not close to the date of the loss or to the alleged threshold rating of the roof tiles. Allstate also argues that Platt has no support for his opinion of a maximum probable windspeed of 70 mph.

The Mindens respond that Platt's reference to lower winds speeds on other dates was for the purpose of critiquing Allstate's expert's report, not as part of his own analysis of the relevant wind speed in September 2019. Additionally, they argue that Platt and Allstate's expert both noted wind gusts exceeding 70 mph in September 2019.

The supplemental report references additional weather research Platt obtained from NOAA Local Climatological stations, as well as Platt's explanation for why Allstate's expert's reliance on another source, the weather underground website, is unreliable. ECF No. 103-6 at 17,

19-20. I see no reason to exclude his opinion on this basis, as he was cataloguing additional data and responding to data provided in another expert's report. *See id.*

As for Platt's opinion on the maximum probable windspeed in the supplemental report, this appears to be a repeat of Allstate's argument that Platt had no support for his statement that there were 75 mph gusts in the Henderson area in September 2019. Platt explained the basis for his wind speed opinions in his original report, along with the support for those conclusions, and supplemented that analysis in his second report. *See id.* at 15-16, 19-20. I deny Allstate's motion to exclude on this basis.

## II. CONCLUSION

I THEREFORE ORDER that defendant Allstate Property and Casualty Company's motions to strike **(ECF No. 103)** and motion to preclude testimony **(ECF No. 133) are DENIED**.

DATED this 4th day of April, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE